| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Hank Moon | Telephone: (313) 226-0220 |
|---|---|---|
| | Special Agent: Sherri Reynolds (ATF) | Telephone: (313) 202-3400 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.
Deon Bell

Case No.    Case: 2:22−mj−30470
Assigned To : Unassigned
Assign. Date : 10/26/2022
CMP USA V BELL (LH)

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 10. 2022_____ in the county of _____Wayne_____ in the ____Eastern____ District of ____Michigan____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951 | Hobbs Act Robbery |
| 18 U.S.C. § 924 (c) | Brandishing a firearm during a crime of violence |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Sherri Reynolds, A.T.F.
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __October 26, 2022__

_____
*Judge's signature*

City and state: _Detroit, Michigan_____

Hon. Anthony P. Patti, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Sherri Reynolds, being duly sworn, hereby state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and have been so employed since December of 2009. I am currently assigned to the Detroit Field Division. I completed twenty-six weeks of training, which was comprised of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program. I received extensive training on firearms identification and common scenarios involving firearms. Additionally, I received training on undercover investigations related to firearms and narcotics trafficking, which included investigative techniques and common subject behavior. During the course of my employment with ATF, I have investigated criminal violations relating to firearms, firearms trafficking, burglaries from FFLs, explosives, arson, violent crime, criminal street gangs, and narcotics. I have participated in all aspects of criminal investigations, including, but not limited to, interviews, physical surveillance, and the execution of search warrants.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, informants, and witnesses. The information outlined below is provided for

1

the limited purpose of establishing probable cause and does not contain all of facts known to law enforcement related to this investigation.

3.     This affidavit is made in support of a criminal complaint charging Deon BELL with taking United States currency and multiple Apple iPhones and Apple Watches from the person or presence of another by force and violence or by intimidation, affecting or obstructing interstate commerce, all in violation of 18 U.S.C. § 1951 (Hobbs Act robbery), and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

## **PROBABLE CAUSE**

4.     On October 10, 2022, at approximatey 2:52 p.m., a heavier set black male wearing a blue hoodie with the hood up, a black mask and a white face mask, blue Nike shorts, a white t-shirt underneath the blue hoodie, and black tennis shoes entered the T-Mobile at 200 East Washington Street, Ann Arbor, MI ("T-Mobile"). As explained below, the man was later identified as Deon Bell. When entering the store, BELL had a galaxy print backpack that he took off when he entered the store and approached the cash register.

5.     After entering, BELL reached into the backpack and produced what appears to be a black pistol from the backpack (see Image 1, below). BELL then pointed the firearm towards the clerk ("victim 1") and dropped the backpack behind the counter. When interviewed, victim 1 said that BELL pointed a black

firearm at him, dropped the backpack, and then told victim 1 what items he wanted from the T-Mobile store. Victim 1 said that BELL put the firearm in the front pocket of his hoodie where BELL kept his hand for the duration of the robbery. A second T-Mobile store employee, victim 2, said that he also saw BELL with the black firearm, and believed that the firearm had laser sights on top of the gun. Victim 2 said that he is familiar with firearms, has shot firearms in the past, and recognized BELL's weapon to be a firearm.



**Image 1: BELL inside the T Mobile with a black handgun**

6. After victim 1 picked up the backpack, BELL directed victim 1 and victim 2 to the room in the back of the T-Mobile store where the Apple iPhones and Apple Watches are kept inside the safe: BELL followed the victims into the safe. Bell then told the victims to load Apple iPhones and Apple Watches into BELL's backpack. After the backpack was loaded, BELL and the victims returned to the cash register where, and BELL's direction, victim 2 opened the cash register

3

and gave BELL approximately $381.00 in United States currency. BELL then exited the store onto Washington Street and headed east away from the store.

7. When the employees/victims loaded the Apple iPhones and Apple Watches into the backpack, they also loaded a decoy phone that mimics an Apple iPhone into the backpack: the decoy phone is designed to track the individual carrying the decoy phone.

8. After law enforcement arrived and made contact with a T-Mobile asset protection representative, they began tracking the decoy phone and saw that it was traveling east towards Detroit on Interstate 96. The T-Mobile asset protection representative maintained contact with law enforcement and provided updates on the decoy phone's location. Ultimately, the decoy phone stopped at HiTek Wireless in Hamtramck, MI.

9. A short time later, law enforcement arrived at HiTek Wireless and inquired about recent Apple iPhone or Apple Watch sales to the store. The clerk produced seven Apple iPhones and seven Apple Watches from behind the counter and said that he purchased them from a black male for approximately $3,000 a short time prior to the officers arrival. The clerk also said that he told the black male that one of the phones was a fake phone—the decoy phone. After hearing this, the black male abruptly left HiTek Wireless. Law enforcement recovered the

Apple iPhones and the Apple Watches as being the same ones stolen from the Robbery Location.

10. Officers conducted a canvas of the area around HiTek Wireless and obtained CCTV footage from multiple locations. A review of the footage from a neighbor's front porch captured a white Jeep Cherokee arriving in the alley near HiTek Wireless. Officers searched the area and found the galaxy backpack used in the T-Mobile robbery in a dumpster. While in the area, officers saw surveillance cameras placed just above the dumpster; they were able to obtain the CCTV footage from these cameras as well. The surveillance footage from the cameras above the dumpster showed the white Jeep Cherokee (with Michigan license plate xxxxxxx) pull up and park next to the dumpster in the alley. A black male wearing a white t-shirt, no mask, blue Nike shorts, and black tennis shoes exited the driver's side of the white Jeep (see Image 2, below). Federal agents familiar with Deon BELL, including your affiant, were able to identify the person getting out of the white Jeep as Deon BELL. The black shoes and Nike shorts BELL is wearing when he exited the Jeep appear to be the same shoes and shorts that BELL wore when robbing the T-Mobile.



**Image 2**

11.   In the surveillance video, BELL appears to take Apple Watches out of the backpack and place them on the backseat of the Jeep. But then you can hear a noise in the surveillance video, which sounds like something being thrown in the dumpster. At this point, BELL gets back into the vehicle and departs the location.

12.   On October 12, 2022, ATF learned of the T-Mobile robbery that occurred on October 10, 2022. ATF is currently investigating BELL in a separate investigation. ATF received a copy of Image 2, and agents—your affiant included—identified BELL as the individual in Image 2. ATF agents also knew from their separate investigation that BELL regularly drives the white Jeep Cherokee (with Michigan license plate xxxxxxx) shown in Image 2. Agents then assisted the Michigan State Police (MSP) with locating the white Jeep Cherokee. MSP located the Jeep n October 12 and conducted a traffic stop: BELL was the

driver and sole occupant. Troopers arrested BELL for the T-Mobile armed robbery in Ann Arbor and impounded BELL's white Jeep.

13. On October 13, 2022, ATF obtained a search warrant for BELL's white Jeep Cherokee and searched the vehicle. BELL's driver's license was in the center console. Agents also found black tennis shoes inside the Jeep that appear to match the shoes that BELL wore during the T-Mobile armed robbery and in they alley near HiTek Wireless. Agents also found white face masks in the Jeep that appear similar to the one BELL wore during the T-Mobile robbery, multiple cellphone charging cables, and empty phone boxes. There was also a "T-Mobile" paper bag located inside the vehicle.

14. On October 13, 2022, agents conducted a review of the GPS/E-911 data associated with BELL's cellular telephone around the time of the T-Mobile armed robbery (ATF obtained a search warrant for BELL's cellular telephone location data on September 21, 2022, as part of ATF's investigation into BELL for unrelated crimes). A review of the data showed that on October 10, 2022 (the day of the robbery), at the same time as the parking structure camera footage showed the white Jeep drive past the T-Mobile, BELL's cellular telephone was located in Ann Arbor, MI—where the robbery occurred. Specifically, BELL's cellular telephone was within 300 meters of the T-Mobile during the time of the robbery. After the robbery, BELL's cellular telephone departed Ann Arbor and traveled to

Hamtramck, Michigan. BELL's location data put his phone near HiTek Wireless near the same time as when BELL was observed on CCTV in the alley behind the business. BELL's cellular device then departed Hamtramck and traveled to the west side of Detroit.

15.   On October 20, 2022, ATF conducted a canvas of the businesses in Ann Arbor near the T-Mobile store for CCTV footage around the time of the armed robbery. Agents located surveillance footage from a parking structure near the T-Mobile that showed a white Jeep Cherokee matching Bell's white Jeep Cherokee driving past the T-Mobile store approximately twenty minutes prior to the robbery.

16.   Finally, based on my training, experience, and investigation in this case, I know that T-Mobile is a international wireless carrier with T-Mobile stores across the United States. According to recent reporting, T-Mobile has more than 110 million subscribers. Therefore, the armed robbery of a T-Mobile store interfered and affected interstate commerce.

## CONCLUSION

17.   Based on the above information, probable cause exists that BELL obtained property (he took United States currency, Apple iPhones, and Apple watches) from the person or presence of another without their consent, by actual or threatened force, violence, or fear, obstructing or affecting interstate commerce, all

in violation of 18 U.S.C. § 1951 (Hobbs Act robbery), and and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

                                        Respectfully Submitted,

_____
Sherri Reynolds, Special Agent
ATF

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Hon. Anthony P. Patti
United States Magistrate Judge

Dated:  October 26, 2022